NOT DESIGNATED FOR PUBLICATION

Nos. 121,918
121,919

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRENT SIMONSSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Decatur District Court; PRESTON PRATT, judge. Opinion filed March 19, 2021.
Affirmed.

*Donald E. Anderson II*, of Law Office of Donald E. Anderson II, LLC, of Great Bend, for
appellant.

*Michael J. Duenes*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., GARDNER, J., and BURGESS, S.J.

PER CURIAM: For the safety of all who use our roads, some Kansas driving
licenses restrict drivers to only driving cars equipped with an ignition interlock device as
a deterrent to drunk driving. It is a misdemeanor to circumvent this restriction. Brent
Simonsson has such a restricted license. He asks us to overturn his two convictions for
circumventing these restrictions for two reasons. First, he claims the State failed to
disprove his defense that he was driving his employer's car on behalf of his employer on
both occasions. Second, he contends some statements made by the prosecutor deprived

him of a fair trial. After reviewing the evidence in the light most favorable to the State, as we are required by law to do, we reject Simonsson's claim of insufficient evidence. And our review of the record reveals no reversible remarks by the prosecutor. Thus, we affirm.

*The jury found Simonsson guilty.*

After his fifth conviction for DUI, Simonsson was restricted from operating a vehicle without an interlock ignition for 10 years. See K.S.A. 2018 Supp. 8-1014(b)(1)(E) and (b)(2)(E). Law enforcement officers in Decatur County were aware of that restriction and cited him in August and September 2018 for operating a Chevy Suburban without an interlock ignition device under K.S.A. 2018 Supp. 8-1017—a misdemeanor. Both times, Simonsson told officers that he could operate the vehicle because he was working for his employer, Mary Long, who owned the vehicle.

After the first citation, Oberlin Chief of Police Brad Burmaster received a letter from Long stating that Simonsson worked in a "variety of capacities" for an LLC that she and her husband owned. In the letter, Long said that she bought another car for herself so that Simonsson could use their company car (the Suburban) while working. She said that Simonsson did "whatever [they] need done whenever needed" and that his duties were "really endless" but included:

- getting groceries;
- getting prescriptions;
- delivering items to Long at her salon;
- taking her husband to appointments;
- getting or delivering mail;
- maintaining a "huge garden" with "a wide variety of produce"; and
- delivering vegetables.

2

She also said that Simonsson walked when taking care of personal business and that she would be willing to testify on Simonsson's behalf.

The case was tried by a jury. Long's letter was admitted as evidence. Simonsson did not call any witnesses. The two officers who had issued the citations—Chief Burmaster and Brad Messersmith of the Decatur County Sheriff's Office—testified for the State.

Because of the insufficient evidence claim in this appeal, we recount much of the officers' testimony.

Chief Burmaster stopped a Chevy Suburban in August 2018 because he saw Simonsson was driving and there was an active warrant for his arrest in an unrelated case. He also knew that Simonsson was restricted from driving a vehicle without an interlock ignition. He confirmed Simonsson's license restriction with his dispatcher. The Suburban was registered to Long in her personal capacity, not to an LLC. Simonsson claimed that he was an employee of Long and her husband and that he was going to a store to donate vegetables.

Chief Burmaster did not believe that Simonsson was driving for business purposes. His investigation could not confirm that the Longs employed Simonsson. At trial, Chief Burmaster acknowledged Long's letter, but he testified that when he interviewed Long, she said that she and Simonsson had a "trade" relationship and she did not pay Simonsson. Simonsson also told Chief Burmaster while he was being booked that he was self-employed and owned a business called Credit Restoration Specialists.

Chief Burmaster visited the garden that Long had mentioned in her letter and found that it was medium sized and not well kept—not the huge garden with a wide variety of produce that Long had described. Nor was there any indication that the produce

3

was being sold. Pictures of that garden were admitted into evidence. Finally, Chief Burmaster testified that when he arrested Simonsson, Simonsson gave the Suburban keys to another person who moved the truck. He made no attempt to contact Long.

In September 2018, Deputy Messersmith approached a Suburban that had driven in front of him and pulled up to some gas pumps. He recognized the driver as Simonsson and knew from a prior arrest that Simonsson was required to have an interlock ignition on his vehicle. The vehicle—Long's Chevy Suburban—did not have an interlock ignition. The Suburban was pulling an empty flatbed trailer; Simonsson did not say what the trailer was for, but his roommate told Deputy Messersmith that Simonsson was moving to Selden, Kansas.

Simonsson again said that he was working for Long but did not say what specifically he was doing. Deputy Messersmith asked Simonsson for some paperwork showing an employer-employee relationship, such as an itinerary or work order. Simonsson said he had nothing and just handed him a copy of the interlock ignition statute that includes the employer exemption section. Deputy Messersmith arrested him.

The court submitted the matter to the jury. The court instructed the jury on Simonsson's defense, stating that the employer's vehicle exemption is a defense to the charges and that the defense does not shift the burden to the defendant. The jury found Simonsson guilty on both counts. The court sentenced him on each count to concurrent sentences of one year in jail with all but 60 days suspended.

In this combined direct appeal of both convictions, Simonsson makes two claims. First, he contends the State failed to present sufficient evidence to disprove his affirmative defense. Second, he claims that some closing statements made by the prosecutor are good reason to reverse his convictions. We will address those issues in that order.

*Sufficient evidence supports Simonsson's convictions.*

The law on this point is well established. Sufficient evidence supports a conviction on appeal when, with the evidence viewed in a light most favorable to the State, the appellate court is convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

The State charged Simonsson with two counts of circumvention of an interlock ignition device under K.S.A. 2018 Supp. 8-1017(a)(4). That statute prohibits a person from "operat[ing] a vehicle not equipped with an ignition interlock device while such person's driving privileges have been restricted to driving a motor vehicle equipped with such device." K.S.A. 2018 Supp. 8-1017(a)(4).

To establish these charges, the State had to prove:

(1) Simonsson operated a motor vehicle not equipped with an ignition interlock device during a period in which his driving privileges were restricted to driving a motor vehicle equipped with such device;

(2) Simonsson did so intentionally; and

(3) this act occurred on or about August 24 and September 27, 2018, in Decatur County, Kansas.

Simonsson does not contest that sufficient evidence supports those elements. Instead, he argues the State presented insufficient evidence to disprove his affirmative defense beyond a reasonable doubt. In other words, the State failed to prove that he was not driving his employer's car for his employer's business.

A point of law must be inserted here. Affirmative defenses do not negate the elements of an alleged offense, they instead provide a legally recognized justification for an action so that the actor cannot be held criminally or civilly liable. *May v. Cline*, 304 Kan. 671, 676, 372 P.3d 1242 (2016).

Simonsson relies on the employer's vehicle exception in K.S.A. 2018 Supp. 8-1015(e), which provides that

> "any person whose license is restricted to operating only a motor vehicle with an ignition interlock device installed may operate *an employer's vehicle* without an ignition interlock device installed *during normal business activities*, provided that the person does not partly or entirely own or control the employer's vehicle or business." (Emphases added.)

With this legal framework in mind, we now review the evidence.

Viewing the evidence in a light most favorable to the State, a rational fact-finder could have found beyond a reasonable doubt that this defense did not apply to Simonsson.

A rational fact-finder could conclude that Long's LLC did not employ Simonsson. The jury was instructed to evaluate whether Simonsson was an employee based on its common knowledge and experience; dictionaries commonly define an employer as someone that employs one or more people for wages or salaries. In Black's Law Dictionary 664 (11th ed. 2019), "employer" is defined as "[a] person, company, or organization for whom someone works; esp., one who controls and directs a worker under an express or implied contract of hire and who pays the worker's salary or wages." Long told Chief Burmaster that she had a "trade" relationship with Simonsson and did not pay him. Simonsson also told Chief Burmaster that he was self-employed and owned his own business.

6

A rational fact-finder could conclude that the Chevy Suburban was Long's personal vehicle. Long's letter stated that Simonsson worked for G and M of SCS, the LLC she and her husband owned. But the vehicle was registered only to Mary Long, not her husband or the LLC.

A rational fact-finder could also conclude that, even if the vehicle belonged to Simonsson's employer, he was not operating it during normal business activities. The first time Simonsson was arrested for driving the vehicle, he was on his way to a shop to donate, not sell, some vegetables. The second time, Simonsson did not say what task he was performing, but the vehicle was hauling a flatbed trailer. Deputy Messersmith testified that the flatbed trailer was for Simonsson to use while moving to a new city.

Given all that, a rational fact-finder could conclude beyond a reasonable doubt that the employer's vehicle defense did not apply to Simonsson. So sufficient evidence supports his convictions. We will not set aside the jury's verdict based on this argument.

*We find no prosecutorial errors in the closing arguments.*

Simonsson alleges three errors by the prosecutor during closing arguments. We use a two-step analysis to evaluate claims of prosecutorial error. We first decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If we do find error, the State must then show beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial given the entire record. In other words, there is no reasonable possibility that the error contributed to the verdict. *State v. James*, 309 Kan. 1280, 1306-07, 443 P.3d 1063 (2019). Here, we need not analyze the second step because we find no error.

First, Simonsson alleges that the prosecutor improperly shifted the burden of proof onto the defense. He claims that the State told the jurors that it just needed to prove the elements of the offense, which ignored the affirmative defense Simonsson had raised. Therefore, the State shifted the burden to him to prove his defense. The record does not support Simonsson's allegation.

Indeed, the prosecutor did first assert that the State had to prove the elements of the offense charged.

> "Here, what the State had to prove was the elements of the crime, and that is two different crimes on two separate occasions, that Mr. Simonsson drove a vehicle within this county. Not once but twice, within the course of about a month. The State has also shown that he was required to have an ignition interlock device, not for just a little while, but for ten years, he's required to have ignition interlock. He didn't have ignition interlock on this vehicle. So that's the elements of the crime."

But the prosecutor then spoke at length about the defense Simonsson had raised and argued that it did not apply under these facts. The prosecutor spoke of the reason for the exemption.

> "What we now have is a claim that he was working for somebody at the time, and Kansas does recognize an exemption or a defense for driving an employer provided vehicle during normal business activities. What's the purpose for that exemption? The purpose is that if you didn't allow people to drive, they wouldn't frankly be able to work at all because driving a vehicle is kind of important, certainly important in this part of the world where we have long distances.
> "But it's also not just a complete carte blanche to drive at all times. Not 24-7, which is what you heard the testimony this morning about, drive 24-7 for this supposed employer."

He talked about the circumstances of this claim of employment.

8

"Here, you've not heard from the employer. You've not heard the employer bring W-2's. You've not heard any report about what wages were paid, other than it was sort of a trade was what the officer testified he had been told. No taxes withheld.

"On the first occasion, he's delivering vegetables. There is no controversy about that. Nobody said anything that would take you in the opposite direction that he was delivering vegetables. That's what he was doing, not to sell them, but to give them away. That's not a business. That's not normal business activities."

The prosecutor then talked about Long's letter to the Police Chief.

"You've got a letter, which is Defendant's Exhibit A, from a supposed employer, but no testimony from the employer. We don't even know that letter is even signed by the employer because there is nothing to validate that Mary Long is the one that signed that letter. Nothing.

"In fact, even if you assumed that letter was from her, it says that Mr. Simonsson was working for G and M of SCS, a limited liability company, but the vehicle is not registered to the limited liability company, it's registered to Mary Long. If, in fact, this letter is from Mary Long.

"The law also requires that the driving be done during normal business activities. We don't even know what the normal business activities are here without the employer.

"So what is this? 24-7 driving. What is it? Simply put, it's an abuse of the exemption to be able to provide an employer provided vehicle. It's supposed to be allowed for people to make a living. We're not making a living delivering vegetables, or on the second occasion using a trailer to move. That was the testimony, not contradicted."

He then mentioned Simonsson's own suggestions.

"He isn't an employee of anybody, he's self-employed. That's what the officers both testified to, for Credit Restoration Specialists. I think it's also telling that when the Oberlin Police Department arrested Mr. Simonsson, he made sure that the keys got to his friends at the shop where he was giving away his vegetables. He didn't want to call his employer, whoever that might be."

9

Thus, it is not true that the prosecutor disregarded the affirmative defense and told jurors to look only at the elements of the charge. There is no error here.

For his second contention, Simonsson argues the prosecutor made several misstatements about the employer's vehicle exception that were "at the very least were misleading to the jury" and "[a]t worst . . . designed to intentionally misinform the jury and deny [Simonsson] a fair trial." He alleges five of the prosecutor's assertions misstated the law:

- The employer's vehicle exception does not allow a person to drive 24-7 in a vehicle without an interlock ignition device;
- the correct standard was "normal business activities," not the scope or course of employment;
- the employer-employee relationship involves paying wages, not a "trade" relationship;
- donating vegetables is not a "normal business activity" under the employer's vehicle exception; and
- Simonsson had not produced evidence showing he was an employee, such as tax or payroll documents.

In our view, when considered in context, none of those remarks misstates the law. The prosecutor is correct that K.S.A. 2018 Supp. 8-1015(e) does not allow a person to drive 24-7—it allows them to operate a vehicle without an interlock ignition device "during normal business activities." That is also why the prosecutor was correct to say that the proper standard was "normal business activities" rather than the scope or course of employment—that is what the statute says.

Simonsson has not pointed to any holding that the scope or course of employment is the correct standard. Under the common understanding of employer and employee, an

10

employer *does* pay wages to an employee, so the prosecutor did not err there either. Nor has Simonsson explained how donating vegetables is a normal business activity. And the prosecutor was also correct that Simonsson had produced no documents showing he was employed by the Longs' LLC. Contrary to Simonsson's assertion, the prosecutor did not imply that the statute required Simonsson to produce those—he was instead pointing to the lack of evidence supporting the defense Simonsson had raised.

For Simonsson's third claim of prosecutorial error, he states that the prosecutor commented on the credibility of his defense and evidence presented to the jury. In general, prosecutors may not offer juries their personal opinions about the credibility of witnesses. Prosecutors have wide latitude, however, to craft arguments that include reasonable inferences to be drawn from the evidence. See *State v. Sean*, 306 Kan. 963, 979-80, 399 P.3d 168 (2017). In a case cited by Simonsson, *State v. Elnicki*, 279 Kan. 47, 64, 105 P.3d 1222 (2005), our Supreme Court reversed a conviction when the prosecutor called the defendant a liar and stated in her closing argument that "the truth shows you beyond a reasonable doubt the defendant is guilty." Nothing like that happened in this trial.

The prosecutor's statements that Simonsson objects to are:

"Folks, the defendant tries to turn this around and say that Mr. Simonsson was driving in the scope of employment or in the course of his employment, but look at Instruction No. 6. It doesn't say anything about scope of employment or course of employment. What it says is during normal business activities. This is simply not credible.

"What's an employer and employee? Well, an employer pays wages and an employee gets wages, and there is no testimony about that here. It's simply not credible.

"I'd remind you the exhibit you have, Defendant's Exhibit A, supposedly from Mary Long, there is no indication that's really from her. You don't know whether it's from her, or not. What this is, plain and simple, it's an abuse of the employment exception.

11

How can you get to normal business activities by delivering veggies to give away from a garden at Mr. Simonsson's house? How do you get to normal business activities when on the second occasion he was moving his belongings on a trailer from Oberlin to Selden? It's not a normal business activity and you shouldn't find that way."

Those statements fall within the wide latitude the law affords the prosecutor. The prosecutor did not comment on the credibility of witnesses, which was the concern in *Elnicki*. Instead, the prosecutor said that, based on the evidence at trial, Simonsson's employer's vehicle defense was not believable. And our Supreme Court has held that a prosecutor may comment on the believability of the defense's evidence or theory. See *State v. Hachmeister*, 311 Kan. 504, 518-19, 464 P.3d 947 (2020).

In summary, then, we find the prosecutor did not shift the burden of proof to the defense. The assertions Simonsson complains about are not misstatements of the law. And the comments made by the prosecutor in closing did not exceed the limits of what the law allows.

We will not address Simonsson's argument about cumulative error since there has been no showing of errors to accumulate.

Affirmed.